MARK B. FROST & ASSOCIATES
RYAN M. LOCKMAN, ESQUIRE
1515 MARKET STREET, SUITE 1300
Philadelphia, PA 19102
215-351-3333

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KAREN RAYFIELD,<br>TAMIKO GRIFFIN,<br>KELLY CARY PACELLI, | : <br> : <br> : <br> : | |
| **Plaintiffs,** | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | |
| CITY OF PATERSON,<br>WILLIAM FRAHER<br>In his individual and official capacities, | : <br> : <br> : | COMPLAINT |
| | : | |
| **Defendants.** | : | |

## INTRODUCTION

1. This action for declaratory, injunctive, monetary and other appropriate relief is brought by Plaintiffs to redress the intentional violations by the Defendants of the rights secured to them by the laws of the United States of America and the statutory and common law of the State of New Jersey.

2. Among other things, Plaintiffs seek recovery for damages suffered as a result of race discrimination in the Paterson Police Department's promotional process for the rank of Sergeant and Lieutenant. The City of Paterson, by and through the individual defendants, discriminated against Plaintiffs and on the basis of race by: 1) intentionally delaying Rayfield and Griffin's promotion to Sergeant, with the intent to thus deprive them of sufficient time in rank to apply for further promotion to Lieutenant. As a result, Plaintiffs were deprived of income and also missed the time-in-rank requirement for the 2016

1

promotional exam for the rank of Lieutenant by approximately one week, thus depriving them of further promotion at that time, 2) intentionally denying Pacelli transfers to favorable assignments and/or shifts otherwise provided to similarly situated officers, and 3) forcing Plaintiffs to work in a racially hostile working environment.

## JURISDICTION

3. This action is brought pursuant to 42 U.S.C. §1983, and the First and Fourteenth Amendments of the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(3) and the aforementioned statutory and constitutional provisions.

4. Jurisdiction lies over state law claims based on the principles of supplemental jurisdiction, as codified at 28 U.S.C.§ 1367.

5. The amount in controversy exclusive of interest and costs exceeds the sum of one hundred thousand Dollars ($100,000).

## VENUE

6. All the claims herein arose within the jurisdiction of the United States District Court for the District of New Jersey and involve Defendants who reside within the jurisdictional limits. Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. §1391(b) and (c).

## PARTIES

7. Plaintiff Karen Rayfield, residing at 660 E. 29th Street, Paterson, NJ 07504, has at all time smaterial since approximately 1996 served as a police officer for the Paterson Police Department (PPD).

8. Plaintiff Tamiko Griffin, residing at 208 Maitland Avenue, Paterson, NJ 07502, has at all times material since approximately March of 2002 served as a police officer for the PPD.

2

9. Kelly Cary Pacelli, residing at 16 Darlington Drive, Wayne, NJ 07470, has at all times material since 1997 served as an employee of the Paterson Police Department, first as a PPD Dispatcher from 1997-2001, and then as a police officer since 2001. Since approximately 2014, Plaintiff Pacelli has served as Sergeant.

10. The City of Paterson is a municipality in the County of Passaic, New Jersey, and has municipal offices located at 155 Market Street, Paterson, New Jersey 07505.

11. The City of Paterson operates and controls the Paterson Police Department ("PPD"), which is located at 111 Broadway, Paterson, New Jersey 07505.

12. Defendant William Fraher at all times material has served as acting chief of police of the Paterson Police Department, located at 111 Broadway, Paterson, New Jersey 07505.

## FACTS

### A. History of Racism In Paterson Police Department

13. There exist several incidents which create a pattern and practice in the Paterson Police Department (PPD), whereby racist comments are made and no legitimate and/or adequate efforts are made by the department to remedy this conduct, halt this conduct, or discipline the individuals involved.

14. Further, this history also included a pattern in PPD whereby African American officers were not promoted to higher ranks in the department.

15. A consent decree had been entered in 2012 between the United States, State of New Jersey, City of Paterson, and other New Jersey municipalities to remedy disproportionally low rates of promotion for minority police officers. Pursuant to said consent decree, certain minority officers received "priority" status on the current promotional list for the rank of Sergeant. The priority list, pursuant to the consent decree and New Jersey civil service laws, had to be exhausted prior to further promotion to Sergeant by the PPD.

16. As will be set forth below, all three of the Plaintiffs were on said priority list and were promoted off said list.

17. After certain minority officers – including Plaintiff Pacelli - were promoted from the priority list in or around October or November 2014, white officers have written racist messages around PPD headquarters pertaining to the promotions of African-Americans. These include the following:

   a. "Priority = dumb + lazy"

   b. "Priority lazy scum"

   c. "Do you honestly believe you should have gotten stripes?" (next to the "priority lazy scum" comment).

   d. "Loose [sic] 3 Sgts, get 2 fake ones."

   e. "Speak English, savage"

   f. "I is dumb. Cans I be a Sgt. too now. Fuck Cheaters."

18. Further, in 2014 officers only lost 8 hours of leave time when they posted a message on social media stating, "I have MLK Blvd and Rosa Parks Blvd, so you know how busy I am". This comment ostensibly claimed that more violence occurred in predominantly-black areas of Paterson.

19. Further, in July of 2015, Plaintiff Griffin's husband, Lt. Washington Griffin, complained to the City Law Department regarding the history of racism in PPD. Lt. Washington Griffin, the highest ranking African American in the PPD at all times material, complained that Chief Fraher and others in PPD were racist and that a racial tension exists in PPD. The Law Department then noted that PPD's conduct could violate the City's discrimination policy. No other action was taken to remedy the racially hostile environment.

20. In approximately July or August of 2015, a Caucasian PPD police officer, Guisseppe Giordano, made racist comments about Plaintiff Pacelli, specifically stating, "I don't take orders from niggers."

21. Giordano also stated that he "hates niggers", and Giordano regularly made racist jokes about Puerto Ricans. This includes comments advocating that the United States military bomb the Commonwealth of Puerto Rico. Additionally, Giordano repeatedly referred to himself "the supreme leader" when speaking to various employees on his assignment.

22. PPD was aware of Giordano's comments, but it had not taken appropriate action to investigate the incident. Rather, Giordano was transferred to the Property Division, and the investigation into his statements was delayed. Thereafter, no thorough investigation was conducted.

23. To date, upon information and belief, no final notice of disciplinary action has been issued against Giordano by the department related to his aforementioned comments.

24. Further, Plaintiff Griffin's husband was then transferred and disciplined in retaliation for his complaints of race discrimination in PPD.

**B.  PPD Hires From Priority List, Delays Plaintiff Rayfield and Griffin's Promotions**

25. As set forth above, a priority list was created for the promotion of minority officers to the rank of Sergeant in PPD.

26. The priority list was certified in the summer of 2014.

27. Chief Fraher repeatedly made comments that indicated his desire to disobey the priority list and instead promote off of the general list.

28. Six minority officers were on the priority list, with Plaintiffs Pacelli, Rayfield and Griffin ranked third, fifth and sixth, respectively.

29. Under the terms of the consent decree, the PPD was required to promote at least four officers from the priority list, but could promote more.

30. All but one of the minority officers on the priority list was African American, the other being Hispanic.

31. In or around October/November of 2014, the PPD promoted the first four individuals off of the promotional list, including Plaintiff Pacelli, but not Plaintiffs Griffin or Rayfield.

32. However, PPD did not promote plaintiffs Griffin or Rayfield at the time, even though spots were available for Sergeants in the department.

33. The PPD then continued to delay promotion of the remaining officers on the list – Plaintiffs Rayfield and Griffin – although the PPD table of organization allowed for the promotion of the plaintiffs.

**C. Plaintiffs Griffin and Rayfield's Promotions Delayed To Disqualify Them From Lieutenant's Exam**

34. As set forth above, the Plaintiffs were eligible for promotion since promotions were first made off of the priority list in 2014. However, Plaintiffs Griffin and Rayfield were not promoted.

35. On September 28, 2015, Plaintiffs Griffin and Rayfield were certified for promotion by the PPD.

36. However, PPD did not actually effectuate Griffin and Rayfield's promotions until October 13, 2015.

37. Griffin and Rayfield's promotions were delayed for the purpose of disqualifying them for promotion for the rank of Lieutenant.

38. This was done to prevent additional African American officers from advancing to higher ranks in PPD. In fact, Plaintiff Griffin's husband, Lt. Washington Griffin, was the highest ranking African American in the PPD at the time.

39. The Lieutenant's exam is held every three years, was to be held the next year (2016), and requires one year of service as a Sergeant in order to apply. The PPD cut-off date for the year in service requirement historically was September 30th.

40. Thus, by delaying Plaintiffs Griffin and Rayfield's promotions to October, the PPD intentionally disqualified them from applying for promotion to Lieutenant the next year, for the 2016 lieutenant's exam.

41. Indeed, a promotional exam for the rank of Lieutenant was thereafter announced, and the cut-off date for the one year of service in rank was September 30th, as expected.

42. As a result, Griffin and Rayfield were disqualified from applying for promotion to Lieutenant as part of the 2016 exam.

43. Griffin and Rayfield both appealed this disqualification to the New Jersey Civil Service Commission (CSC); the CSC ruled that even though Griffin and Rayfield were eligible and certified for promotion earlier, they did not possess the one year in rank necessary for promotion to Lieutenant because PPD delayed their promotions until October 13, 2015,

44. Rather, Griffin and Rayfield will now have to wait another three years for promotion, at which point those Caucasian officers on the *regular* promotional list will have already been promoted to Sergeant and serving in rank for more than a year. Thus, Griffin and Rayfield will face discriminatory promotional processes again, and the PPD will not be limited in the manner in which it conducts promotions to Lieutenant.

45. Indeed, shortly after Griffin and Rayfield's promotion to Sergeant, the PPD sought to promote twelve (12) Caucasian officers.

7

46. In 2016, the regular promotional list was used to promote Caucasian officers.

47. This demonstrates that over a dozen open Sergeant's positions had in fact been available, but that the PPD intentionally refused to promote Griffin and Rayfield, because they were on the priority list. Indeed, as soon as the PPD was no longer subject to the priority list, it began to promote several officers to Sergeant. The purpose of delaying Griffin and Rayfield's promotions was to deny them the ability to apply for the 2016 Lieutenant's exam.

48. As a result of Defendants' conduct, Griffin and Rayfield 1) lost a year in rank as a Sergeant, causing lost income, 2) lost a promotional opportunity for the rank of Lieutenant in 2016, causing further lost income in the future.

49. Further, as a result of the above racial discrimination, which includes being forced to endure a hostile working environment, Griffin and Rayfield have also suffered emotional distress.

50. As a result of the aforementioned retaliation and/or discrimination, Griffin and Rayfield have suffered lost pay, lost pension benefits, lost stipends, other economic damages, loss of life's pleasures, loss of reputation, benefits, emotional distress, physical manifestation of emotional distress, and other damages.

**D. Plaintiff Pacelli Repeatedly Denied Transfers To More Favorable Assignments And/Or Shifts.**

51. Plaintiff Pacelli was promoted in or around October of 2014.

52. Prior to being promoted, Plaintiff Pacelli was assigned to the Juvenile Division.

53. The pattern, practice and custom of PPD was when an officer is promoted, said officer will remain in the division to which he or she had been previously assigned prior to promotion.

54. Within approximately one month of being promoted, however, in November of 2014 Plaintiff was transferred to patrol, in the B1 shift, 4:00am-3:00pm.

55. Notably, she was transferred into the shift that had, immediately prior, been occupied by Plaintiff's husband, also a PPD Sergeant, Louis Pacelli, who was transferred to the night shift.

56. This created a child care issue for the Pacelli family, since neither parent would be home with their children for extended periods of time during the day.

57. Plaintiff, accordingly, requested a transfer to another shift, but this request was denied.

58. In January of 2015, Plaintiff was again transferred, this time to the cell block, for the 4pm to midnight shift.

59. Again, this caused a childcare-related hardship, since her husband worked the night shift and thus no one would be home with their children after school.

60. On or about May 7, 2015, Plaintiff again requested a transfer to anywhere, as long as it was on the day shift. This was in order to eliminate the aforesaid child care issue.

61. This request was never formally acted upon.

62. However, Plaintiff received a phone call later that month from Lt. Popov, stating that Plaintiff's husband could transfer shifts but that she could not.

63. As set forth above, in approximately July or August of 2015, a Caucasian PPD police officer, Guisseppe Giordano, heard that Pacelli may be transferred to his shift, the day shift on the cell block. In response, Giordano made racist comments about Plaintiff Pacelli, specifically stating, "I don't take orders from niggers."

64. PPD was aware of Giordano's comments, but did not take appropriate action to investigate the incident. Rather, Giordano was transferred to the Property Division, and the

9

investigation into his statements was delayed. Thereafter, no thorough investigation was conducted.

65. Remarkably, after learning of these comments, instead of transferring Plaintiff to the day shift, PPD did not transfer Plaintiff after Giordano's racist comments were made. Rather, Plaintiff was made to continue working the night shift, and a Caucasian Sergeant was assigned to the day-shift cell block assignment.

66. In October of 2015, Plaintiff requested a transfer out of the cell block to other assignments with different hours. This included the Internal Affairs, Juvenile, or Intelligence divisions.

67. However, this request was denied.

68. Laster that month, a non-African-American sergeant was given a transfer to Internal Affairs over Plaintiff.

69. In December of 2015, Plaintiff was transferred to the B2 shift on patrol, 7:00am to 6:00pm. This did not eliminate the child care issue, because her shift ended at 6pm and therefore she could not pick up her children from school.

70. Plaintiff again requested a transfer in or around January of 2016, but this was denied.

71. In January of 2017, Plaintiff was finally transferred to the 7:00am to 3:00pm shift in Juvenile. However, prior to that time, she was repeatedly denied transfers to more desirable shifts, for over two years.

72. Upon information and belief, this was due to her race.

73. Lastly, Plaintiff has applied for the rank of Lieutenant. Per the terms of the aforementioned consent decree, Plaintiff was to receive retroactive seniority as Sergeant since the time of her first Sergeant's test, which was in approximately 2007. Because seniority in rank is a factor on the Lieutenant's exam, this additional seniority positively affects one's exam score and ranking.

74. However, when Plaintiff applied to Lieutenant, the PPD initially did not count the retroactive seniority of those promoted off of the priority list.

75. This is further evidence of racial bias and/or a culture of resentment in PPD towards the priority list and those minority officers on said list.

76. Finally, after this was reported to the New Jersey Civil Service Commission did PPD provide the proper seniority of the officers promoted to Sergeant from the priority list.

77. As a result, Plaintiff's ranking on the Lieutenant's list has improved by three spots.

78. As a result of the above racial discrimination, which includes being forced to endure a hostile working environment, Plaintiff Pacelli has also suffered emotional distress.

79. As a result of the aforementioned retaliation and/or discrimination, Plaintiff Pacelli has suffered lost pay, lost pension benefits, lost stipends, other economic damages, loss of life's pleasures, loss of reputation, benefits, emotional distress, physical manifestation of emotional distress, and other damages.

**COUNT I**
**ALL PLAINTIFFS V. ALL INDIVIDUAL DEFENDANTS**
**42 U.S.C. § 1983**
**VIOLATION OF EQUAL PROTECTION CLAUSE OF FOURTEENTH AMENDMENT**

80. Plaintiffs adopt and incorporate the allegations in the above paragraphs as though each were individually stated herein at length.

81. Defendants violated the provisions of 42 U.S.C. § 1983 in that Defendants, acting under color of state law, deprived Plaintiffs of the privileges and immunities secured to them by the Fourteenth Amendments of the United States Constitution and, in particular, the right under the equal protection clause to be free from discrimination on the basis of race.

82. Defendants maintained a hostile working environment and willfully and recklessly took adverse employment action against Plaintiffs, in order to discriminate against them on the basis of race.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

i.    Enter a declaratory judgment that Defendants' retaliatory acts complained of herein have violated and continue to violate the rights of Plaintiffs as secured by the United States Constitution;

ii.    Enjoin Defendants from continuing said retaliatory practices;

iii.    Award Plaintiff compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

iv.    Award reasonable costs and attorney's fees;

v.    Award punitive damages;

vi.    Order an accounting of the Paterson "off-duty account".

vii.    Grant any other relief this Court deems just and proper under the circumstances.

**COUNT II**
**ALL PLAINTIFFS V. CITY OF PATERSON**
**EQUAL PROTECTION CLAUSE**
**VIOLATION OF 42 U.S.C. §1983**

83. Plaintiffs adopt and incorporate the allegations in the above paragraphs as though each were individually stated herein at length.

84. Defendant City of Paterson developed and maintained a number of deficient policies and/or customs which caused the deprivation of Plaintiffs' constitutional rights,

specifically Plaintiff's rights under the Equal Protection clause of the Fourteenth Amendment.

85. Defendant City of Paterson's policies and customs encouraged the individual defendants to believe that they could violate the constitutional rights of Plaintiffs with impunity and with the explicit or tacit approval of the Defendant City of Paterson.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

i.    Enter a declaratory judgment that Defendants' retaliatory acts complained of herein have violated and continue to violate the rights of Plaintiff as secured by the United States Constitution;

ii.   Enjoin Defendants from continuing said retaliatory practices;

iii.  Award Plaintiffs compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

iv.   Award reasonable costs and attorney's fees;

v.    Award punitive damages;

vi.   Order an accounting of the Paterson "off-duty account".

vii.  Grant any other relief this Court deems just and proper under the circumstances.

**COUNT III**
**ALL PLAINTIFFS v. ALL DEFENDANTS**
**NEW JERSEY LAW AGAINST DISCRIMINATION – Race Discrimination**

86. Plaintiffs adopt and incorporate the allegations in the above paragraphs as though each were individually stated herein at length.

13

87. Plaintiffs were discriminated against and forced to ensure a hostile working environment due to his race, as set forth above.

88. Defendants, who were high-ranking officials in the PPD, were aware of the aforementioned discrimination and hostile work environment, as set forth above. Defendants were all supervisors and all aided and abetted the discriminatory conduct as set forth above.

89. Defendants' actions aforesaid violate the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* in that Plaintiff has been discriminated against due to his race.

90. As a direct and proximate result of Defendants' actions, Plaintiffs have, and will in the future, suffer pain, emotional distress, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation, lost wages, lost wage earning capacity, loss of benefits and past and future medical expenses.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

     i.     Enter a declaratory judgment that Defendants' retaliatory acts complained of herein have violated and continue to violate the rights of Plaintiff as secured by the United States Constitution;

     ii.     Enjoin Defendants from continuing said retaliatory practices;

     iii.     Award Plaintiffs compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

     iv.     Award reasonable costs and attorney's fees;

     v.     Award punitive damages;

     vi.     Order an accounting of the Paterson "off-duty account".

vii.     Grant any other relief this Court deems just and proper under the

circumstances.

## COUNT IV
## ALL PLAINTIFFS v. ALL DEFENDANTS
### Violation of NJCRA

91. Plaintiffs adopt and incorporate the allegations in the above paragraphs as though each were individually stated herein at length.

92. Plaintiffs, as Paterson Police Officers, has a New Jersey state constitutionally protected right to be free from race discrimination.

93. The individual defendants were decision makers and/or policy makers who possessed final authority to establish policy with respect to the operations of the City of Paterson and Paterson Police Department. These individuals were also directly responsible for the efficiency and routine day to day operations of the Paterson Police Department, and have the authority to:

  i. administer and enforce rules and regulations and special emergency directives for the disposition and the discipline of the force and its officers and personnel;

  ii. have, exercise, and discharge the functions, powers and duties of the force;

  iii. prescribe the duties and assignments of all subordinates and other personnel; and

  iv. delegate such of his authority as he may deem necessary for the efficient operation of the force to be exercised under his direction and supervision.

94. Defendants acted under the color of law, and subjected Plaintiffs to the deprivation of their rights, privileges or immunities as secured by the New Jersey Constitution.

15

95. Defendants violated Plaintiffs' New Jersey Constitutional rights in that the Defendants acting under color of state law, denied Plaintiffs of the privileges and immunities secured to them by the New Jersey Constitution.

96. Defendants' actions were to discriminate against Plaintiffs on the basis of race.

97. Defendant City of Paterson is liable to Plaintiffs for the violation of their Constitutional rights under the NJCRA, *N.J.S.A.* 10:6-2.

98. As a direct and proximate result of Defendants' actions, Plaintiffs have and will in the future, suffer pain, emotional distress, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation, lost wages, lost wage earning capacity, loss of benefits and past and future medical expenses.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

   i.     Enter a declaratory judgment that Defendants' retaliatory acts complained of herein have violated and continue to violate the rights of Plaintiffs as secured by the United States Constitution;

   ii.    Enjoin Defendants from continuing said retaliatory practices;

   iii.   Award Plaintiffs compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

   iv.    Award reasonable costs and attorney's fees;

   v.     Award punitive damages;

   vi.    Order an accounting of the Paterson "off-duty account".

   vii.   Grant any other relief this Court deems just and proper under the circumstances.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: July 14, 2017                                      MARK B. FROST & ASSOCIATES

                                                         /s/ Ryan Lockman
                                                         Ryan Lockman, Esq.
                                                         Counsel for Plaintiffs