NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RAYFIELD, et al.,**<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>**CITY OF PATERSON, et al.,**<br><br>　　　　　Defendants. | Civil Action No. 17-5144 (ES) (MAH)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

This matter comes before the Court on Defendants City of Paterson and William Fraher's (together, "Defendants") motion to dismiss Plaintiffs Karen Rayfield, Tamiko Griffin, and Kelly Cary Pacelli's (together, "Plaintiffs") Amended Complaint. (D.E. No. 11). The Court has considered the parties' submissions in support of and in opposition to the instant motion and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court GRANTS Defendants' motion to dismiss.

### I.　BACKGROUND[1]

*Factual Background.* Plaintiffs are three police officers, Karen Rayfield, Kelly Pacelli, and Tamiko Griffin, and, who have been employed as police officers with the Paterson Police Department ("PPD") since 1996, 1997 and 2002, respectively. (D.E. No. 11, Amended Complaint ("Am. Compl.") ¶¶ 7–9). Plainitffs bring this claim against the City of Patterson (which operates

---

[1] The Court must accept Plaintiffs' factual allegations as true for purposes of resolving Defendants' motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012) ("As such, we set out facts as they appear in the Complaint and its exhibits.").

and controls the PPD) and Acting Chief of Police William Fraher ("Chief Fraher" or "Defendant Fraher"). (*Id.* ¶¶ 11–12).

Under the terms of a 2012 consent decree with the United States, the PPD was required to promote certain minority police officers placed on a "priority list" to the rank of sergeant before promoting any non-minority officers. (*Id.* ¶ 15). The consent decree also required the PPD to promote at least four officers from the priority list. (*Id.* ¶ 31). Plaintiffs were on the priority list; Pacelli occupied the third spot, while Rayfield and Griffin occupied the fifth and sixth spots, respectively. (*Id.* ¶¶ 16, 30).

In or around October 2014, Pacelli was promoted from the priority list to the rank of sergeant, but neither Rayfield nor Plaintiff Griffin received a promotion at that time (even though Plaintiffs allege that additional spots for sergeants in the department existed). (*Id.* ¶¶ 34–35). During this time, Plaintiffs also allege that white officers within the department wrote racist and disparaging messages directed towards the officers who had been placed on the priority list.[4] (*Id.* ¶ 17). In addition, a racially charged social media post, authored by a PPD officer, was circulated around the department and observed by Plaintiffs.[5] (*Id.* ¶ 19).

On September 28, 2015, the PPD certified Griffin and Rayfield for promotion to the rank of sergeant; their promotion, however, did not take effect until October 13, 2015. (*Id.* ¶¶ 39–40). Plaintiffs allege that Defendant Fraher purposefully delayed the effectuation of their promotion to

---

[4] Plaintiffs allege that white officers wrote "racist messages around PPD headquarters pertaining to the promotions of African-Americans." (Am. Compl. ¶ 17). The messages alleged to have been authored by white officers included: "Priority = dumb + lazy"; "Priority lazy scum"; "Do you honestly believe you should have gotten stripes[]"; "Loose [sic] 3 Sgts, get 2 fake ones'" "Speak English, savage"; and "I is dumb. Cans [sic] I be a Sgt. Too now. Fuck Cheaters." (*Id.*).

[5] The social media post contained the following statement: "I have MLK Blvd and Rosa Parks Blvd, so you know how busy I am." (*Id.* ¶ 19).

2

prevent them from qualifying for the lieutenant's exam, which requires that applicants serve as a sergeant for at least one year prior to applying for the exam.[6] (*Id*. ¶ 40). Specifically, Plaintiffs allege that Defendant Fraher's delay in effectuating their promotion "was done to prevent additional African American officers from advancing to higher ranks in PPD," was the result of a "policy and/or custom of the department, created an enforced by Chief Fraher, to delay the promotions of minority officers for as long as feasible, and to avoid, delay and/or minimize the further promotion of minority officers into higher ranks in the PPD," and allege that Defendant Fraher had previously "made comments that indicated his desire to disobey the priority list and instead promote off of the general list." (*Id*. ¶¶ 42, 29, 36). Although Griffin and Rayfield applied to sit for the 2016 lieutenant's exam—administered every three years—they were disqualified from .[8] (*Id*. ¶ 46). Plaintiffs claim that because of the disqualification, they "will face discriminatory promotional processes again," since "the PPD will not be limited [by the priority list] [to] conduct[] promotions to Lieutenant," and that the disqualification has caused them "lost income" because they "lost a year in rank as a [s]ergeant" and "lost a promotional opportunity for the rank of lieutenant." (*Id.* ¶¶ 48, 53).

Plaintiffs also allege that they have been the subject of workplace retaliation since filing suit against Defendants. (*Id*. ¶ 54). Specifically, Rayfield alleges that (i) in the days following filing of suit, a PPD police officer purposefully misspelled Rayfield's last name as "Ratfield" on the envelope containing her paycheck; and (ii) on one occasion no white officers provided her with

---

[6] The lieutenant exam is administered every three years. (*Id*. ¶ 43). At the time of Griffin and Rayfield's promotion to sergeant in 2015, the next lieutenant's exam was scheduled for 2016. (*Id.*). Because the one-year-in-service requirement for the lieutenant's exam had a cut-off date of September 30, 2015, and because Griffin and Rayfield's promotion to sergeant had not been effectuated until after that date, neither Plaintiff would have been eligible to sit for the upcoming exam in 2016. (*Id.* ¶ 46).

[8] Griffin and Rayfield appealed their disqualification determination to the New Jersey Civil Service Commission, who determined that neither Griffin nor Rayfield were eligible because they both lacked the year-in-service requirement. (*Id*. ¶ 47).

3

backup. (*Id.* ¶¶ 55, 57). Plaintiffs claim that Defendants' discriminatory practices caused them lost pay, pension benefits, and stipends, in addition to reputational harm, emotional distress, other economic damages, and the loss of life's pleasures. (*Id.* ¶ 62).

Pacelli further alleges that she has been subjected to a hostile work environment and racial discrimination since her promotion to the rank of sergeant in 2014. (*Id.* ¶ 94). Specifically, Pacelli alleges that Defendants have assigned her to unfavorable shifts, denied several requests for transfers to other shifts with more favorable working hours, and failed to discipline a fellow PPD officer after he made racially charged comments about African Americans. (*Id.* ¶¶ 67, 78, 89–91). Plaintiffs allege that the hostile work environment and racial discrimination they have faced is the result of a "practice and/or custom of racial bias and a culture of resentment in PPD towards the priority list . . . ." (*Id.* ¶ 91).

Prior to her promotion to the rank of sergeant in October 2014, Pacelli was assigned to the Juvenile Division, where she expected to remain after her promotion.[9] (*Id.* ¶¶ 64–65). A month following her promotion, Plaintiff Pacelli was transferred to a 4:00 a.m. to 3:00 p.m. patrol shift. (*Id.* ¶ 67). This transfer created a "child care issue" for Pacelli because her husband, also a PPD police officer, was "transferred to the night shift." (*Id.* ¶ 68). Despite PPD being aware of the child care issue caused by this schedule, Pacelli's request to be transferred to another shift was denied. (*Id.* ¶ 71). In January 2015, Pacelli was transferred to the 4 p.m. to midnight shift. (*Id.* ¶ 72). This transfer did not alleviate the child care issue—in fact, Pacelli alleges that it exacerbated the issue because "no one would be home with their children after school." (*Id.* ¶ 73). In May 2015, Pacelli submitted another request to be transferred to a different shift. (*Id.* ¶ 75). Although

---

[9] Plaintiffs allege that "[t]he pattern, practice, and custom of PPD was when an officer is promoted, said officer will remain in the division to which he or she has been previously assigned prior to promotion." (*Id.* ¶ 65).

that request was never "formally acted upon," Pacelli did receive a phone call from a lieutenant informing her that while she would be unable to transfer shifts, her husband could. (*Id*. ¶ 76). Pacelli alleges that the phone call she received from the lieutenant was "made at the direction of Chief Fraher." (*Id.* ¶ 77).

In or around July 2015, while Pacelli continued to seek a transfer to a day shift, another white officer currently assigned to the day shift on the cell block made racially charged statements about African Americans. (*Id.* ¶ 78). Specifically, when this officer learned that there was a chance that Pacelli would be transferred to his shift, Plaintiffs allege that the white officer—who ranked below Pacelli—stated: "I don't take orders from niggers." (*Id.*). Plaintiffs allege that although the Defendants were aware of the comments, the officer was never disciplined and any investigation into the incident was stalled and ultimately discontinued by Defendants. (*Id.* ¶ 79).

In October 2015, Pacelli submitted another request to be transferred to an alternate shift, which included the Internal Affairs, Juvenile, or Intelligence divisions. (*Id.* ¶ 82). Although her request was denied, the Defendants transferred a non-African American sergeant to Internal Affairs later that same month. (*Id.* ¶ 84). In December 2015, Pacelli was again unsolicitedly transferred to another shift, the 7:00 a.m. to 6:00 p.m. shift, which did not resolve her child care issues. (*Id.* ¶ 85). Pacelli submitted another request to be transferred, but the request was again denied. (*Id*. ¶ 86). Finally, in January 2017, Pacelli was transferred to a shift that alleviated her child care needs. (*Id.* ¶ 87). In total, Pacelli alleges that her requests to be transferred to more desirable shifts were denied four times, and that Defendants refused to honor her transfer requests because of her race. (*Id.* ¶ 88).

Finally, Pacelli alleges that Defendants failed to apply retroactive seniority to her candidacy for lieutenant, which would, if applied, positively affect a candidate's exam score and

5

ranking. (*Id.* ¶¶ 89–90). Pacelli concedes that she was finally granted retroactive seniority but only after reporting Defendants' failure to do so to the New Jersey Civil Service Commission.[10] (*Id.* ¶ 92). Plaintiffs allege that Defendants' failure to apply the retroactive seniority is "further evidence of [a] practice and/or custom of racial bias and a culture of resentment in PPD towards the priority list and those minority officers on [the] list." (*Id.* ¶ 91).

*Procedural History.* Plaintiffs initiated this action on July 14, 2017, against Defendants City of Patterson and Chief Fraher. (*See* D.E. No. 1). On September 22, 2017, Plainitffs filed an Amended Complaint alleging race discrimination in violation of their Fourteenth Amendment equal protection rights pursuant to 42 U.S.C. § 1983 (Count I) (Am. Compl. ¶¶ 96–98); developing and maintaining racially discriminatory policies and customs in violation of their Fourteenth Amendment equal protection rights pursuant to § 1983 (Count II) (*id.* ¶¶ 99–102); race discrimination in violation of New Jersey Law Against Discrimination ("NJLAD") (Count III) (*id.* ¶¶ 103–08); race discrimination in violation of the New Jersey Civil Rights Act ("NJCRA") (Count IV) (*id.* ¶¶ 109–16); and workplace retaliation in violation of Plaintiffs First Amendment right pursuant to § 1983 (Count VI) (*id.* ¶¶ 122–26) and NJLAD (Count V) (*id.* ¶¶ 117–21).

Defendants moved to dismiss Plainitffs' Amended Complaint on October 20, 2017. (D.E. No. 14-14 ("Def. Mov. Br.")). Plainitffs opposed Defendants' motion on December 4, 2017. (D.E. No. 24 ("Pl. Opp. Br.")). And Defendants submitted a reply in further support of their motion on December 18, 2017. (D.E. No. 29 ("Def. Reply Br.")). The matter is now ripe for resolution.

---

[10] As part of the consent decree, the City of Paterson and the PPD were required to grant retroactive seniority to sergeant to minority officers who had been promoted from the priority list. (*Id.* ¶ 89).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that a pleader is entitled to relief." The statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). Although the pleading standard announced by Rule 8 does not require detailed factual allegations, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To withstand a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, [a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Additionally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Finally, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

## III.   DISCUSSION

### A.   Count VI: First Amendment Retaliation

*Overview.*   Plaintiffs allege that Defendants violated their First Amendment rights by retaliating against them and seek relief from this Court under 42 U.S.C. § 1983. (*See generally* Am. Compl.).  In support of their motion, Defendants argue, among other things, that Plaintiffs' First Amendment retaliation claim fails as a matter of law because "a vindication of a matter of private concern [] does not qualify for First Amendment protection." (Def. Mov. Br. at 26).

*Legal Standard.*   To establish a claim under § 1983, a plaintiff must establish that a person acting under color of state law deprived him of a federal right.  42 U.S.C. § 1983; *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000).  Generally, the First Amendment prohibits public employers from taking adverse action against an employee because of an employee's actual or perceived engagement in constitutionally protected political activity.  *See Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1419 (2016) ("When an employer demotes an employee out of a desire to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983.").

To sustain a First Amendment retaliation claim, a plaintiff must establish that: "(i) he engaged in activity protected by the First Amendment;[11] (ii) [the] defendants retaliated in response; and (iii) [the] defendants could not rebut the claim by demonstrating that they would have taken the same action even in the absence of the protected speech." *Ober v. Brown*, 105 F. App'x 345, 346-47 (3d Cir. 2004) (citing *Baldassare*, 250 F.3d at 194–95).

The Third Circuit applies "a well-established three-step test to evaluate a public employee's claim of retaliation for engaging in activity protected under the First Amendment." *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d. Cir. 2005). *Hill* states a three part test: (i) "the employee must show that the activity is in fact protected"; (ii) "the employee must show that the protected activity 'was a substantial factor in the alleged retaliatory action'"; and (iii) "the employer may defeat the employee's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct." *Id*. (quoting *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

*Analysis.* Applying these principles, the Court first notes that Plaintiffs have not alleged that they engaged in any conduct that would amount to constitutionally protected activity. (*See generally* Am. Compl.). Under the first *Hill* prong, Plaintiffs are required to show that the activity that led to the retaliation was protected. 411 F.3d at 125. Yet Plaintiffs have failed to set forth any facts to suggest that they engaged in any protected activity. (*See generally* Am. Compl.). Rather, Plaintiffs allege that (i) Defendants "developed and maintained a number of deficient

---

[11] A court determines as a matter of law whether activity is protected by the First Amendment. *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001). In making this determination, a court first considers if the speech in question involves a matter of public concern. *Id.* "A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community." *Id.* If a court determines that the speech involves a matter of public concern, it next considers whether plaintiff's "interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees." *Id.* (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

policies and/or customs which caused the deprivation of . . . Plaintiff's [sic] rights under the First Amendment"; (ii) Defendant Fraher was "a decision maker and/or policy maker who possessed final authority to establish policy, and list other responsibilities Defendant Fraher had the authority to administer; and (iii) they have been "retaliated against, as set forth above." (*Id.* ¶¶ 123–25). Although the Court must accept Plaintiffs' factual allegations in resolving the Defendants' motion, these "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Plaintiffs have failed to set forth the factual allegations necessary to sustain a First Amendment retaliation claim and therefore cannot establish a violation of a federal right as is needed to sustain a § 1983 claim. Accordingly, the Court dismisses Count VI of Plaintiffs' Amended Complaint *without prejudice.*[12]

### B. Counts I, II & IV: Fourteenth Amendment Equal Protection Clause and New Jersey Civil Rights Act

*Overview.* Plaintiffs allege that Defendants violated their Fourteenth Amendment rights under the Equal Protection Clause in violation of § 1983. (Am. Compl. ¶¶ 96–102). They claim that Defendant Fraher, acting under color of law, "deprived Plaintiffs of the privileges and immunities secured to them by the Fourteenth Amendment" by maintaining a "hostile working environment and willfully and recklessly [taking] adverse employment action against Plaintiffs . . . on the basis of [their] race." (Am. Compl. ¶ 97–98). Plaintiffs also claim that Defendants "developed and maintained a number of deficient policies and/or customs which caused the deprivation of Plaintiffs' constitutional rights," and that these policies and customs "encouraged the individual defendants [sic] to believe that they could violate the constitutional

---

[12] Because the Court dismisses Count VI on the grounds that Plaintiffs have not set forth sufficient facts for the Court to infer that Plaintiffs engaged in any constitutionally protected activity, it need not address whether Plaintiffs have sufficiently pleaded the remaining elements of this claim.

rights of Plaintiffs . . . ." (*Id.* ¶¶ 100, 102). In sum, Plaintiffs allege a litany of abuses by the PPD and Defendant Fraher that stem from Defendant Fraher's unwillingness to promote Plaintiffs on account of their race, his failure to discipline other members of the PPD for racially charged comments about African American police officers, and his failure to transfer Plaintiff Pacelli to more favorable shifts. (*Id.* ¶¶ 17, 23, 24, 26, 34, 41). According to Plaintiffs, Defendant Fraher's behavior was part of an "unconstitutional policy and/or custom" he created and enforced. (*Id.* ¶ 52).

In support of their motion, Defendants contend that Plaintiffs' Fourteenth Amendment claim fails because it does not set forth viable claims under § 1983. (Def. Mov. Br. at 5). As to Plaintiffs' claim that Defendants failed to timely promote them—or delayed their promotion—because they were African American, Defendants contend that Plaintiffs did not have a protectable right in being promoted from the priority list, and as a result, "Plaintiffs' Section 1983 [] claims lack basis in law due [to] the absence of a protectable right." (*Id.* at 9–10). Defendants contend that for the same reason, Pacelli's claim that she was denied more favorable shifts because of her race fails to identify a protectable right: "This claim fails as a matter of law because Plaintiff Pacelli has no protectable right to a transfer to a shift that suits her childcare needs . . . ." (*Id.* at 10). Defendants posit that because Plaintiffs have failed to adequately allege a constitutional violation under the Fourteenth Amendment, "then necessarily, no liability can attach to the public entity under *Monell*." (*Id.* at 7).

Plaintiffs counter that Defendants have mischaracterized the basis of their Fourteenth Amendment claims by relying on an analysis for a procedural-due-process claim, rather than an equal-protection claim. (Pl. Opp. Br. at 12). Plaintiffs recapitulate the claims made in their Amended Complaint—that "Plaintiffs Rayfield and Griffin had their promotions delayed, with the

intent of preventing them from becoming eligible to take a subsequent promotional exam for Lieutenant"; and that "Chief Fraher denied Plaintiffs' promotions to Sergeant, in order to deny them the ability to further seek promotion to Lieutenant by the next exam." (*Id.* at 15). Further, Plaintiffs assert that their allegation that Pacelli was denied transfers to more favorable shifts satisfies a claim under the Equal Protection Clause because "[g]iven the Defendants' clear knowledge that Plaintiff's shifts created a specific child care issue, refusing to transfer her—and repeatedly transferring her to other positions which also created a child care issue—this [sic] constitutes adverse employment action." (*Id.* at 15). Finally, Plaintiffs contend that their *Monell* claim is viable because "Chief Fraher's repeated discriminatory conduct . . . establishes a policy for the City," and that "the Chief created a long-standing policy of race discrimination in the department, and he even personally perpetuated a policy wherein minority officers were either not promoted or had their promotions delayed." (*Id.* at 18).

***Legal Standard.*** The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a traditional equal protection claim, a plaintiff must (i) allege facts showing the existence of purposeful discrimination; and (ii) have received treatment different from that received by other individuals similarly situated. *Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd. Of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009). Further, to impose liability on a municipality or local government under § 1983, a plaintiff must show (i) the existence of a relevant policy or custom and (ii) that the policy caused the constitutional violation alleged. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005).

***Analysis.*** Here, although Plaintiffs have alleged that Defendants delayed their promotion, they nonetheless fail to allege facts that rise above speculation for this Court to infer that their

12

promotions were delayed because of their race. Because "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause," plaintiffs, in general, are tasked with alleging facts that do more than speculate on discriminatory intent or purpose. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977); *Twombly*, 550 U.S. 544 (2007). In alleging that their promotions were delayed because of their membership in a protected class, Plaintiffs nonetheless concede in their Amended Complaint that Defendants promoted other minority officers, including Pacelli: "Six minority officers were on the priority list, [including the Plaintiffs]" and "Chief Fraher [] promoted the first four individuals off of the promotional list, including Plaintiff Pacelli . . . ." (*Id*. ¶¶ 30, 34).

Further, Plaintiffs' next allegation—that once promoted, the effectuation of their promotion was delayed because of their race—does not rise above a "bare assertion" of discrimination and fails to "plausibly suggest[]" that Defendants acted with the intent to discriminate against Plaintiffs. *Twombly*, 550 U.S. at 556–57. Indeed, Plaintiffs make no allegations that Defendant Fraher was responsible or had the authority to effectuate Plaintiffs' promotions. (*See generally* Am. Compl.). And even if that were the case, Plaintiffs fail to allege that any other similarly situated officers' promotions were effectuated before that of Plaintiffs. (*See id.*). Rather, Plaintiffs baldly assert that "Chief Fraher intentionally disqualified them from applying for promotion to Lieutenant the next year," without asserting any factual allegations to support their conclusion (besides Plaintiffs' membership in a protected class). (*Id.* ¶ 44). Without more, Plaintiffs' allegations that Defendants delayed Plaintiffs' promotions because of their race fail to state a viable claim under the Equal Protection Clause of the Fourteenth Amendment.

For similar reasons, Plaintiffs' claim that Defendants denied Plaintiff Pacelli's transfer requests to work more favorable shifts fails to state a viable claim under the Equal Protection

Clause. While Plaintiffs do allege Defendants denied several of Plaintiff Pacelli's requests to be transferred, Plaintiffs assert no factual allegations—i.e., non-conclusory assertions—that Defendants denied Plaintiff's request because of her race. (*Id.* ¶ 88). Plaintiffs' assertions that a "non-African-American [sic] sergeant was given a transfer to Internal Affairs over Plaintiff" or that another officer who had made racially charged statements about African Americans "was transferred by Fraher to the Property Division," do little to propel their equal-protection claim past speculation. (*Id*. ¶¶ 84, 79). Plaintiffs nowhere allege that other similarly situated PPD officers were granted transfer requests to a shift that, if granted to Pacelli, would have alleviated her child care needs. (*See generally id.*). Plaintiffs recognize that only a "day shift" schedule would have "eliminate[d] the [] child care issue," but make no allegations that the PPD had the availability to accommodate Pacelli's request to be transferred to the day shift or that other non-minority officers holding the rank of sergeant had been transferred to the day shift. (*Id.*). And nevertheless, Plaintiffs concede that Pacelli "was finally transferred to the [7 a.m. to 3 p.m.] shift in Juvenile." (*Id*. ¶ 87). Without more, Plaintiffs fail to state a claim for which relief can be granted.

Plaintiffs' claim that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by maintaining a hostile work environment also fails. The Third Circuit has recognized that a plaintiff is not precluded from bringing both a Title VII and § 1983 claim when "a plaintiff alleges conduct which violates both rights guaranteed by the Constitution and the statutory rights created by Title VII." *Hargrave v. Cty. of Atl.*, 262 F. Supp. 2d 393, 440 (D.N.J. 2003) (recognizing that racial and sexual harassment in public employment could violate both Title VII and the Equal Protection Clause of the Fourteenth Amendment). To bring a claim under § 1983 for the denial of equal protection, a plaintiff must satisfy the two-prong requirement of *Chambers ex rel. Chambers*, 587 F.3d at 196. A hostile-work-environment claim brought under

the aegis of the Fourteenth Amendment requires that a plaintiff show: "(1) that he or she suffered intentional discrimination because of race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) a basis for personal liability." *Ugorji v. New Jersey Envtl. Infrastructure Tr.*, No. 12-5426, 2014 WL 2111076, at *5 (D.N.J. June 19, 2014). In addition, when a plaintiff seeks to establish individual liability for racial harassment under § 1983, "there must be some affirmative conduct by the supervisor that played a role in the discrimination." *Hargrave*, 262 F. Supp. 2d at 440 (internal quotations omitted).

Here, Plaintiffs have failed to allege facts that support an inference that Defendant Fraher purposefully discriminated against them or that Defendant Fraher engaged in affirmative conduct that played a role in the discrimination. Nowhere in Plaintiffs' Amended Complaint are there coherent factual allegations—rather than legal conclusions—that Defendant Fraher purposefully discriminated against Plaintiffs or that Defendant Fraher engaged in affirmative conduct to perpetuate racial discrimination.

To be clear, while Plaintiffs allege that various PPD officers wrote racially charged messages "around PPD headquarters pertaining to the promotions of African-Americans," that an officer made a racist comment referring to African Americans after learning that there was a chance Pacelli would become his supervisor, that a PPD officer purposely misspelled Rayfield's last name on the envelope containing her paycheck, and that no non-minority officers provided backup to Rayfield, Plaintiffs make no factual allegations from which the Court can reasonably

15

infer that Defendant Fraher directed, contributed, or otherwise engaged in affirmative conduct that played a role in this alleged conduct. (Am. Compl. ¶¶ 17, 22, 55, 57).[13]

For these reasons, Plaintiffs' Amended Complaint fails to state a viable constitutional claim against Defendants and, as a result, Plaintiffs fail to state a viable *Monell* claim. A municipality's liability under § 1983 and *Monell* "must be founded upon evidence that the government unit itself supported a violation of *constitutional rights*." *See Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (emphasis added); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–91 (1978). Thus, absent a viable claim that Plaintiffs' constitutional rights were violated, there exists no legal basis for either a § 1983 or *Monell* claim against Defendants. *See Monell*, 436 U.S. at 690. As such, Counts I and II of Plaintiffs' Amended Complaint must be dismissed.

Finally, the Court notes that federal courts construe claims under the NJCRA as coextensive with claims under § 1983. *See Lee v. Padilla*, No. 11-1463, 2011 WL 3475480, at *5 (D.N.J. Aug. 9, 2011). Thus, for these same reasons, the Court finds that Plainitffs have failed to sufficiently plead any violations of their rights under the NJCRA. Accordingly, the Court dismisses Counts I, II and IV of Plaintiffs' Amended Complaint *without prejudice*.

### C. Counts III & V: New Jersey Law Against Discrimination

*Overview.* The allegations relevant to the Court's analysis for determining whether Plaintiffs state a viable claim under NJLAD are identical to those the Court has addressed in its discussion of Plaintiffs' § 1983 and Fourteenth Amendment claims. *See supra* Section III.B. As such, the Court launches into the relevant legal analysis without recapitulating what has already been discussed. To recap, Plaintiffs allege two distinct theories of liability under the NJLAD:

---

[13] In light of the Court's disposition, the Court need not decide whether Plainitffs' allegations would be sufficient to meet the *Ugorji* factors for a hostile work environment at this time. *See* 2014 WL 2111076, at *5.

racial discrimination and retaliation. (Am. Compl. ¶¶ 103–08, 117–21). The Court discusses both theories below.

***NJLAD Discrimination.*** The NJLAD prohibits discrimination "because of race, creed, color, national origin, ancestry, age, sex, gender identity or expression, affectional or sexual orientation, marital status, familial status, liability for service in the Armed Forces of the United States, disability or nationality." N.J.S.A. § 10:5–3. Under the NJLAD, a *prima facie* claim for racial discrimination requires evidence that the plaintiff (i) belongs to a protected class; (ii) was performing a job at a level that met the employer's legitimate expectations; (iii) suffered an adverse employment action; and (iv) others not within the protected class did not suffer similar adverse employment actions. *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 446-49 (2005).

The Court finds that Plaintiffs' allegations are insufficient to state a claim for discrimination under the NJLAD. Even if Plaintiffs' Amended Complaint satisfied the first, second, and fourth prongs of the analysis under the NJLAD, Plaintiffs have nevertheless alleged no facts for this Court to reasonably infer that they suffered an adverse employment action (i.e., Plainitffs have alleged no facts to establish the third prong of this analysis).

Generally, "[a]n employment action is tangible when it 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Wesley v. Palace Rehab. & Care Center, L.L.C.*, 3 F. Supp. 3d 221 (D.N.J. 2014) (citing *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Plaintiffs allege that Defendants delayed their promotions, yet they concede that they were eventually promoted and make no allegations that they were entitled to these promotions sooner than they received them. (Am. Compl. ¶ 41). Plaintiffs allege that they were "discriminated against and forced to ensure [sic] a hostile working environment due to

17

their race" (*id.* ¶ 104), but a viable claim under the NJLAD requires allegations that Plaintiffs suffered some adverse employment action, *Zive*, 182 N.J. at 446-49. And Plaintiffs have failed to meet that burden here.

In so far as Plaintiffs allege that Defendants' refusal to grant Pacelli's requests to be transferred to the day shift constituted an adverse employment action, Plaintiffs fail to allege—as required by the fourth prong—that others not within the protected class did not suffer similar adverse employment action. And in any event, Plaintiffs concede that Pacelli was "eventually" transferred to the day shift. (Am. Compl. ¶ 87). Plaintiffs therefore have failed to sufficiently plead discrimination under the NJLAD. Accordingly, the Court dismisses Count III of the Amended Complaint *without prejudice*.

*NJLAD Retaliation.* Finally, the Court turns to Plaintiffs' claim that they were retaliated against in violation of the NJLAD, specifically that they were retaliated against in response to filing suit against Defendants. (Am. Compl. ¶¶ 117–21). Plaintiffs allege that "a PPD officer wrote 'Ratfield' instead of "Rayfield" on an envelope containing [her] paycheck," and that "when Plaintiff Rayfield sought backup, no officers volunteered to provide said backup." (*Id*. ¶¶ 55–57).

The antiretaliation provision of the NJLAD makes it unlawful for:

> [A]ny person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint [] under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

N.J.S.A. 10:5–12(d).

To state a claim for discriminatory retaliation, a plaintiff must show: "(i) that she engaged in a protected activity known to the employer; (ii) that the employer retaliated against her, and (iii) that engaging in the protected activity was a cause of the retaliation." *Garcia v. Speziale*, No. 10-

2637, 2015 WL 1307323, at *6 (D.N.J. Mar. 23, 2015).  Plaintiffs fail to set forth any allegations that *the employer*—here, Defendants—retaliated against her, and therefore are unable to state a viable claim against Defendants for retaliation under the NJLAD.  Accordingly, the Court dismisses Count V of the Amended Complaint *without prejudice*.

IV. **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss.  Plaintiffs' Amended Complaint is dismissed *without prejudice*.  An appropriate Order accompanies this Opinion.

<u>*s/Esther Salas*</u>
**Esther Salas, U.S.D.J.**