**Not for Publication**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| KAREN RAYFIELD, et. al., | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 17-5144 (ES) (SCM) |
| | : | |
| v. | : | OPINION |
| | : | |
| CITY OF PATERSON and WILLIAM FRAHER, | : | |
| | : | |
| Defendants. | : | |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendants City of Paterson ("Paterson") and William Fraher's ("Fraher") (together, "Defendants") motion to dismiss (D.E. No. 41) Plaintiffs Karen Rayfield ("Rayfield"), Tamiko Griffin ("Griffin"), and Kelly Cary Pacelli's ("Pacelli") (together, "Plaintiffs") Second Amended Complaint (D.E. No. 38 ("SAC")). The Court has considered the parties' submissions and decides the matter without oral argument.[1] *See* Fed. R. Civ. P. 78(b). For the reasons below, the Court GRANTS-IN-PART and DENIES-IN-PART Defendants' motion.

## I.      Background[2]

***Factual Background.*** Rayfield, Pacelli, and Griffin are three police officers who have been employed with the Paterson Police Department ("PPD") since 1996, 1997, and 2002, respectively. (SAC ¶¶ 7–9). Plaintiffs bring this case against Paterson, which operates and

---

[1]      (D.E. No. 41-1 ("Moving Br."); D.E. No. 45 ("Opp'n Br."); D.E. No. 47 ("Reply Br.")).

[2]      The Court must accept Plaintiffs' factual allegations as true for purposes of resolving Defendants' motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012) ("As such, we set out facts as they appear in the Complaint and its exhibits.").

controls the PPD, and Fraher, who at all material times was chief of police. (*Id.* ¶¶ 11–12).

Under the terms of a 2012 consent decree with the United States, the PPD was required to promote certain minority police officers placed on a "priority list" to the rank of sergeant before promoting any non-minority officers. (*Id.* ¶ 15). The consent decree also required the PPD to promote at least four officers from the priority list. (*Id.* ¶ 31). Plaintiffs were on the priority list; Pacelli occupied the third spot, while Rayfield and Griffin occupied the fifth and sixth spots, respectively. (*Id.* ¶¶ 16 & 30).

Around October or November 2014, Pacelli was promoted from the priority list to the rank of sergeant, but neither Rayfield nor Griffin received a promotion at that time, despite PPD's ability and budget to do so. (*Id.* ¶¶ 34–35). Plaintiffs also allege that after Pacelli's promotion around October or November 2014, white officers wrote racist messages around PPD headquarters pertaining to the promoted black officers. (*Id.* ¶ 17). Those messages stated: "Priority = dumb + lazy;" "Priority lazy scum;" "Do you honestly believe you should have gotten stripes[];" "Loose 3 Sgts, get 2 fake ones[];" "Speak English, savage;" and "I is dumb. Cans I be a Sgt. too now. Fuck Cheaters." (*Id.*). In addition, white PPD officers circulated a social media post around the department which stated: "I have MLK Blvd and Rosa Parks Blvd, so you know how busy I am." (*Id.* ¶¶ 19–20).

Plaintiffs were aware of or viewed the messages and social media post. (*Id.* ¶¶ 18 & 20). Plaintiffs allege that Fraher was aware of the racist messages written around PPD headquarters, but that Fraher and the PPD did not take appropriate remedial action. (*Id.* ¶ 18). Plaintiffs further allege that "Fraher repeatedly made comments that indicated his desire to disobey the priority list and instead promote off the general list."[3] (*Id.* ¶ 18). Plaintiffs contend that refusing

---

[3] Plaintiffs do not specify what comments were made or when they were uttered.

to promote Rayfield and Griffin in 2014 "was done for no legitimate purpose, and was instead done with the discriminatory intent of promoting as few minority officers to [s]ergeant as possible." (*Id.* ¶ 39).

On September 28, 2015, the PPD certified Griffin and Rayfield for promotion to the rank of sergeant; their promotion, however, did not take effect until October 13, 2015. (*Id*. ¶¶ 41 & 43). Plaintiffs allege that Fraher purposefully delayed the effectuation of their promotion to prevent them from qualifying for the lieutenant's exam, which requires that applicants serve as a sergeant for at least one year before applying for the exam.[4] (*Id.* ¶¶ 44–50). Specifically, Plaintiffs allege that Fraher's delay in effectuating their promotion "was done to prevent additional African American officers from advancing to higher ranks in PPD," and was the result of a "policy and/or custom of the department, created and enforced by Chief Fraher, to delay the promotions of minority officers for as long as feasible, and to avoid, delay and/or minimize the further promotion of minority officers into higher ranks in the PPD." (*Id.* ¶¶ 45 & 56). Although Griffin and Rayfield applied to sit for the 2016 lieutenant's exam—administered every three years—they were disqualified from sitting for the exam.[5] (*Id.* ¶¶ 46 & 50). Plaintiffs claim that because of the disqualification, they "will face discriminatory promotional processes again," since "the PPD will not be limited in the manner in which it conducts promotions to Lieutenant." (*Id.* ¶ 52). Plaintiffs further allege that the disqualification has caused them "lost income" because they "lost a year in rank as a [s]ergeant" and "lost a promotional opportunity for the rank

---

[4]     The lieutenant exam is administered every three years. (*Id.* ¶ 46). At the time of Griffin and Rayfield's promotion to sergeant in 2015, the next lieutenant's exam was scheduled for 2016. (*Id.*). Because the one-year-in-service requirement for the lieutenant's exam had a cut-off date of September 30, 2015, and because Griffin and Rayfield's promotion to sergeant had not been effectuated until after that date, neither Plaintiff would have been eligible to sit for the upcoming exam in 2016. (*Id.* ¶¶ 48–50).

[5]     Griffin and Rayfield appealed their disqualification determination to the New Jersey Civil Service Commission, who determined that neither Griffin nor Rayfield were eligible because they both lacked the year-in-service requirement. (*Id.* ¶ 51).

of Lieutenant." (*Id.* ¶ 57).

Pacelli alleges that she has been subjected to a hostile work environment and racial discrimination. (*Id.* ¶ 99). Specifically, Pacelli alleges that Defendants have assigned her to unfavorable shifts, denied several requests for transfers to other shifts with more favorable working hours, and failed to discipline a fellow PPD officer after he made racist comments. (*Id.* ¶¶ 67–100).

Before her October 2014 promotion to sergeant, Pacelli was assigned to the Juvenile Division.[6] (*Id.* ¶¶ 67–68). In November 2014, Pacelli was transferred to a 4 a.m. to 3 p.m. patrol shift. (*Id.* ¶ 71). This transfer created a "child care issue" for Pacelli because her husband, also a PPD police officer, was "transferred to the night shift." (*Id.* ¶¶ 72–73). Despite PPD being aware of the childcare issue caused by this schedule, Pacelli's request to be transferred to another shift was denied. (*Id.* ¶¶ 74–75). In January 2015, Pacelli was transferred to the 4 p.m. to midnight cell block shift. (*Id.* ¶ 76). Pacelli alleges that this transfer did not alleviate the childcare issue because "[neither parent] would be home with the[] children after school." (*Id.* ¶ 77). Around May 2015, Pacelli "requested a transfer to anywhere, so long as it was on the day shift." (*Id.* ¶ 78). Although that request was never "formally acted upon," Pacelli did receive a phone call from a lieutenant informing her that while she would be unable to transfer shifts, her husband could. (*Id.* ¶ 79 & 81). Pacelli alleges that the phone call she received from the lieutenant was "made at the direction of Chief Fraher." (*Id.* ¶ 82).

Around July or August 2015, while Pacelli continued to seek a transfer to a day shift, a white officer upon learning that Pacelli could be transferred to his shift, stated: "I don't take orders from niggers." (*Id.* ¶ 83). Plaintiffs allege that, although Defendants were aware of the

---

[6]     Plaintiffs allege that "[t]he pattern, practice, and custom of PPD was when an officer is promoted, said officer will remain in the division to which he or she has been previously assigned prior to promotion." (*Id.* ¶ 69).

comments, they did not take appropriate action. (*Id.* ¶ 84).

In October 2015, Pacelli again requested to be transferred to an alternate shift and was denied. (*Id.* ¶¶ 87–88). In December 2015, Pacelli was transferred to a 7 a.m. to 6 p.m. shift which "did not eliminate the childcare issue, because her shift ended at 6pm and therefore she could not pick up her children from school." (*Id.* ¶ 90). Pacelli submitted another request to be transferred, but the request was again denied. (*Id.* ¶ 91). Finally, in January 2017, Pacelli was transferred to a 7 a.m. to 3 p.m. shift that alleviated her childcare needs. (*See id.* ¶ 92). Pacelli alleges that upon information and belief, various day shifts were open and available during the two-year period, that these shifts were provided to white and/or non-black officers, and that Defendants refused to grant her transfer requests because of her race. (*Id.* ¶¶ 81 & 93).

Pacelli further alleges that Defendants initially failed to apply retroactive seniority to her candidacy for lieutenant, which would, if applied, positively affect a candidate's exam score and ranking. (*Id.* ¶¶ 94–95). Pacelli concedes that she was finally granted retroactive seniority, but only after reporting Defendants' failure to do so to the New Jersey Civil Service Commission.[7] (*Id.* ¶ 97). Plaintiffs allege that Defendants' failure to apply the retroactive seniority is "further evidence of [a] practice and/or custom of racial bias and a culture of resentment in PPD towards the priority list and those minority officers on [the] list." (*Id.* ¶ 96).

***Procedural History.*** Plaintiffs initiated this action on July 14, 2017. (D.E. No. 1). Plaintiffs filed an amended complaint on September 22, 2017. (D.E. No. 11). On June 11, 2018, the Court dismissed the Amended Complaint without prejudice for failure to state a claim upon which relief could be granted. (*See* D.E. Nos. 34 & 35).

Plaintiffs filed the Second Amended Complaint on July 17, 2018. (SAC). In it, Plaintiffs

---

[7]     As part of the consent decree, the City of Paterson and the PPD were required to grant retroactive seniority to sergeant to minority officers who had been promoted from the priority list. (*Id.* ¶ 94).

assert four claims based on the facts described above: (i) a claim under 42 U.S.C. § 1983 against Fraher in his individual capacity for race discrimination and hostile work environment in violation of the Fourteenth Amendment Equal Protection clause (Count I); (ii) a claim under 42 U.S.C. § 1983 against Paterson for maintaining deficient policies and/or customs that caused the alleged race discrimination and hostile work environment, in violation of the Fourteenth Amendment Equal Protection clause (Count II); (iii) a claim for race discrimination and hostile work environment against Defendants under the New Jersey Law Against Discrimination ("NJLAD") (Count III); and (iv) a claim for race discrimination under the New Jersey Civil Rights Act ("NJCRA"). (*Id.* ¶¶ 104–21).

## II.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that a pleader is entitled to relief." The statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). Although the pleading standard announced by Rule 8 does not require detailed factual allegations, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To withstand a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, [a]ll allegations in the complaint must be accepted

as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Additionally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Finally, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

## III.    Discussion

### A.    All Counts: Griffin's and Rayfield's Denial of Promotion Claims

*Overview.*  Griffin and Rayfield allege that Defendants' refusals to promote them around October or November 2014 constitutes racial discrimination under the Fourteenth Amendment's Equal Protection Clause, the NJLAD, and the NJCRA.  (*See* SAC ¶¶ 34–39 & 101–21).  Griffin and Rayfield allege that, as a result of Defendants' discrimination, they lost a year in rank and income as a sergeant.  (*Id.* ¶ 57).  Defendants argue that these discrimination claims accrued in October or November 2014.  (Moving Br. at 6).  Because Plaintiffs filed this action on July 14, 2017, Defendants argue that the claims are barred by the applicable two-year statutes of limitation.  (*Id.* at 5–7).  Plaintiffs counter that the claims are not barred by the applicable statutes of limitation because the claims did not accrue until the alleged delay in promotion around October 1, 2015.  (*See* Opp'n Br. at 11–12).

*Legal Standard.* The statute of limitations for Plaintiffs' claims under 42 U.S.C. § 1983, NJLAD, and NJCRA is two years from accrual. *See O'Connor v. City of Newark*, 440 F.3d 125, 126–27 (3d Cir. 2006) (applying a two-year statute of limitations for § 1983 brought in New Jersey); *Johnson v. Passaic Cty.*, No. 13-4363, 2014 WL 2203842, at *9 (D.N.J. May 23, 2014) (applying a two-year statute of limitations for NJCRA claims); *Roa v. Roa*, 985 A.2d 1225, 1231 (N.J. 2010) (applying a two-year statute of limitations for NJLAD claims).

Generally, a claim accrues "when the plaintiff has 'a complete and present cause of action.'" *See Wallace v. Kato*, 594 U.S. 384, 388 (2007) (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). In determining when claims have accrued in the employment law context, courts distinguish between discrete, individually actionable, retaliatory or discriminatory acts, and acts that may not be individually actionable but which can be aggregated into a hostile work environment claim. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–22 (2002) (applying this principle under Title VII of the Civil Rights Act of 1964), *superseded in non-relevant part by statute*, Pub. L. No. 111-2, § 3; *O'Connor*, 440 F.3d at 128 (holding that *Morgan* "appl[ies] with equal force to § 1983 claims"); *Shepherd v. Hunterdon Developmental Ctr.*, 803 A.2d 611, 623 (N.J. 2002) (holding that *Morgan*'s framework applies in NJLAD cases); *Gormley v. Wood-El*, 93 A.3d 344, 358 (N.J. 2014) (holding that a Fourteenth Amendment analysis under § 1983 and NJCRA is the same).

"A discrete retaliatory or discriminatory act 'occur[s]' on the day that it 'happened.'" *Morgan*, 536 U.S. at 110. For discrete retaliatory or discriminatory acts, a claim has accrued and the statute of limitations begins to run when the act has occurred. *See id.* at 113. "Each discrete [retaliatory or] discriminatory act starts a new clock for filing" a lawsuit related to that act. *See*

*id.* Such discrete acts "are not actionable if time barred, even when they are related to acts alleged in timely filed" lawsuit. *See id.* Examples of discrete retaliatory or discriminatory acts include "termination, failure to promote, denial of transfer, [and] refusal to hire." *Id.* at 114; *see also O'Connor*, 440 F.3d at 127 ("We can thus take from *Morgan* the following non-exhaustive list of discrete acts for which the limitations period runs from the act: termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, wrongful accusation.").

By contrast, hostile work environment claims by "[t]heir very nature involve[] repeated conduct" and "cannot be said to occur on any particular day." *Morgan*, 536 U.S. at 115. This conduct "occurs over a series of days or perhaps years," and unlike discrete acts, a single act of this type may not be actionable on its own. *Id.* Rather, a hostile work environment claim comprises "a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117. In evaluating a hostile work environment claim, courts may consider "the entire scope of [the] . . . claim, including behavior alleged outside of the statutory time period, . . . for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* at 105.

***Analysis.*** Defendants' refusals around October or November 2014 to promote Griffin and Rayfield to sergeant were two discrete acts of alleged racial discrimination. *See id.* at 114; *O'Connor*, 440 F.3d at 127. Therefore, Griffin's and Rayfield's discrimination claims related to Defendants' refusals to promote them to sergeant accrued when the refusals occurred—around October or November 2014. *See Morgan*, 536 U.S. at 114; *O'Connor*, 440 F.3d at 127. Consequently, Plaintiffs needed to file those discrimination claims no later than the end of 2016. *See O'Connor*, 440 F.3d at 126–27; *Johnson*, 2014 WL 2203842, at \*9; *Roa*, 985 A.2d at 1231.

Plaintiffs did not file this lawsuit until July 4, 2017. (*See* D.E. No. 1). Accordingly, the Court finds that Griffin's and Rayfield's denial of promotion claims are barred by the applicable statutes of limitation.

Plaintiffs provide no legal authority to indicate that Defendants' 2014 refusals to promote Griffin and Rayfield were not discrete acts from which the applicable statutes of limitation began to run at the time each act occurred. (*See* Opp'n Br. 11–12). In fact, Plaintiffs provide no legal authority at all to support their position that these claims accrued around October 1, 2015. (*See id.*). And Plaintiffs do not argue any equitable consideration for tolling the statutes of limitation. (*See id.*). For these reasons, the Court will dismiss Counts I, II, III, and IV *with prejudice* to the extent they seek relief for racial discrimination pertaining to Defendants' 2014 refusals to promote Griffin and Rayfield to sergeant.[8]

## B. Counts I, II & IV: Griffin's and Rayfield's § 1983 and NJCRA Race Discrimination Claims

*Overview.* Griffin and Rayfield allege that Defendants violated their rights under the Fourteen Amendment Equal Protection Clause to be free from discrimination based on their race. (SAC ¶¶ 101–07 & 114–21). They assert causes of action under 42 U.S.C. § 1983 and the NJCRA. (*Id.*). Specifically, Griffin and Rayfield allege that although they were promoted to sergeant on September 28, 2015, Fraher purposefully delayed the effectuation of their promotions until October 13, 2015, to prevent them from qualifying for the lieutenant's exam. (*Id.* ¶¶ 40–48). They also allege that Paterson has "an unconstitutional policy and/or custom . . ., created and enforced by Chief Fraher, to delay the promotions of minority officers for as long as feasible, and to avoid, delay and/or minimize the further promotion of minority officers into

---

[8]      The Court clarifies that this ruling does not preclude Plaintiffs from arguing that Defendants' 2014 refusals to promote Griffin and Rayfield form part of the "series of separate acts that collectively constitute" their hostile work environment claims (*see infra* 21–24), although the Court in doing so does not comment on the strength of that argument. *See Morgan*, 536 U.S. at 115–18.

higher ranks in the PPD." (*Id.* ¶ 36).

Defendants argue that Plaintiffs have not alleged any facts to support their conclusion that Fraher intentionally discriminated against Griffin and Rayfield by delaying the effectuation of their promotions past September 30, 2015. (Moving Br. at 10–11). Defendants also argue that Plaintiffs have not alleged that any similarly situated officers were promoted ahead them or that non-minority promotions were expedited to give them sufficient service time to sit for the lieutenant's exam. (*Id.* at 11). With respect to Paterson, Defendants contend that Plaintiffs have not alleged facts establishing an official policy or unofficial custom of delaying the promotion of black officers, or a causal link of the policy or custom to Griffin's and Rayfield's alleged injuries. (*Id.* at 11–12).

Plaintiffs counter that the pleadings establish intentional discrimination by Fraher. (*See* Opp'n Br. 14–16). In support, Plaintiffs argue that "Fraher repeatedly made comments that indicated his desire to disobey the priority list and instead promote off of the general list." (*Id.* at 14). Plaintiffs further argue that Fraher and PPD sought to promote twelve white officers shortly after Griffin and Rayfield's promotions. (*Id.* at 15). In sum, Plaintiffs contend that "[t]he Second Amended Complaint demonstrates Fraher's ability to make promotions and his knowledge that delaying Plaintiffs' promotions to [s]ergeant would further harm their future promotional eligibility for the rank of Lieutenant." (*Id.*). Regarding the discrimination claims against Paterson, Plaintiffs argue that they have pleaded a viable *Monell* claim because Fraher as chief of police was a policy maker whose actions constitute either the affirmative proclamation of a policy or acquiescence in a well-established custom. (*See id.* at 20–24).

***Legal Standard.*** The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

U.S. Const. amend. XIV, § 1.  To state an equal protection claim, a plaintiff must (i) allege facts showing the existence of purposeful discrimination; and (ii) have received treatment different from that received by other individuals similarly situated.  *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. Of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009).  Further, to impose liability on a municipality or local government under § 1983, a plaintiff must show "(1) she possessed a constitutional right of which she was deprived; (2) the municipality had a policy; (3) the policy 'amount[ed] to deliberate indifference' to the plaintiff's constitutional right; and (4) the policy was the 'moving force behind the constitutional violation.'"  *Vargas v. City of Phila.*, 783 F.3d 962, 974 (3d Cir. 2015) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

   *Analysis.*  Here, Griffin and Rayfield's allegation that once promoted, the effectuation of their promotion was delayed because of their race, does not rise above a "bare assertion" of discrimination and fails to "plausibly suggest[]" that Defendants acted with the intent to discriminate against Plaintiffs.  *Twombly*, 550 U.S. at 556–57.  Because "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause," plaintiffs, in general, are tasked with alleging facts that do more than speculate on discriminatory intent or purpose.  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).  The alleged facts Plaintiffs proffer as proof of racially discriminatory intent or purpose are merely speculative.  *See id.*

   Plaintiffs proffer the vague allegation that "Fraher repeatedly made comments that indicated his desire to disobey the priority list and instead promote off the general list."  (*See* SAC ¶ 29).  Construing this allegation in the light most favorable to Plaintiffs, the Court interprets it to mean that Fraher disapproved of the affirmative action plan embodied in the 2012 consent decree and wished that he could disobey it.  *See Free Speech Coal., Inc. v. Attorney Gen.*

*of U.S.*, 677 F.3d 519, 536 (3d Cir. 2012) (explaining that in a motion to dismiss, the complaint must be construed in a light most favorable to the non-moving party).  The Court finds that disapproving of an affirmative action plan and indicating a desire to disobey it, without more, cannot support an inference of racially discriminatory intent or purpose.  *See Vill. of Arlington Heights*, 429 U.S. at 265.  One can think of many reasons why a police chief might disagree with an affirmative action plan being implemented within his department.  Racial animus is only one of them.  Here, Plaintiffs do not specify what comments were made by Fraher, when they were made, or in what context they were uttered.  (*See* SAC).  Plaintiffs do not allege that Fraher has violated the 2012 consent decree.  (*See id.*).  Moreover, Plaintiffs do not provide a single fact for this Court to reasonably connect Fraher's "desire to disobey the priority list and instead promote off the general list" to the roughly two-week delay in effectuation of Griffin's and Rayfield's promotions.  (*See id.*).  Indeed, many employees experience an administrative delay between the time they are informed of a promotion and the time they start the new position.  There is nothing in the Second Amended Complaint to reasonably suggest that Griffin and Rayfield experienced anything other than this typical administrative delay.  *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Plaintiffs' argument that Fraher and PPD's seeking to promote twelve white officers shortly after Griffin's and Rayfield's promotions demonstrates purposeful discrimination fares no better.  (*See* Opp'n Br. at 15).  First, the Court under these circumstances cannot reasonably attribute discriminatory intent to the allegation that Defendants sought to promote white officers *shortly after* Griffin's and Rayfield's promotions.  (*See id.*).  As Plaintiffs have pleaded, the consent decree required Defendants to promote off the priority list before promoting non-

minority officers. (SAC ¶ 15). Therefore, common sense indicates that if Defendants wanted to promote any white officer to sergeant in 2015, the time frame for Defendants seeking to do so very likely would have been "shortly after" Griffin's and Rayfield's promotions. *See Iqbal*, 556 U.S. at 679.

The Court also cannot attribute discriminatory intent to the allegation that Defendants sought to promote *twelve* white officers after Griffin's and Rayfield's promotions in 2015. (*See* Opp'n Br. at 15). The Second Amended Complaint provides absolutely no context for Defendant's decision to attempt to promote these twelve white candidates. (*See* SAC). Plaintiffs have not pleaded how many minorities were promoted from the priority list or the relative proportion of minority to white officers eligible for promotion, such that the Court could infer a disproportionately low promotion rate for minority officers. (*See id.*). Moreover, Plaintiffs have not alleged that any minority officer in fact remained on the priority list to be promoted after Griffin and Rayfield. (*See id.*). Even if there were, Plaintiffs have not alleged facts that these twelve white officers were equally or less qualified, or equally or less senior, than minority officers remaining on the list, such that the Court could infer that Defendants might be failing to promote other minority officers because of their race. (*See id.*).

In short, the Court agrees with Defendants that Plaintiffs offer only a bare legal conclusion that the delay in Griffin and Rayfield's promotion was motivated by intentional racial discrimination. (*See* Moving Br. at 10). Plaintiffs have not pleaded more than a sheer possibility that Fraher delayed their promotions because of their race, and a sheer possibility is not enough to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

Griffin and Rayfield also have not adequately pleaded the second prong of an equal protection claim—i.e., that they have received treatment different from that received by other

individuals similarly situated. *See Chambers*, 587 F.3d at 196. As Defendants correctly highlight, Griffin and Rayfield "do not allege that any similarly situated individuals (i.e., non-minority Officers eligible for promotion) were promoted ahead of them or that such non-minority promotions were expedited to give them sufficient service time to sit for the Lieutenant's exam." (*See* Moving Br. at 11; SAC). Indeed, Plaintiffs have not alleged that the two-week delay in effectuating Griffin and Rayfield's promotions "was unusual or deviated from [PPD's] protocol." (*See* Moving Br. at 11; SAC).

In conclusion, Griffin and Rayfield have not stated a viable Fourteenth Amendment Equal Protection claim with respect to the 2015 delay in their promotions, because they have shown neither purposeful discrimination nor unequal treatment. *See Chambers*, 587 F.3d at 196. For the same reasons, Griffin and Rayfield's NJCRA race discrimination claims also fail. *See Gormley*, 93 A.3d at 358. And because Griffin and Rayfield have not shown that their equal protection rights were violated, they have not pleaded a viable *Monell* claim. *See Vargas*, 783 F.3d at 974 (holding that a viable *Monell* claim requires a plaintiff to show that her constitutional rights have been violated).

The Court will dismiss Counts I, II, and IV to the extent they seek relief for racial discrimination pertaining to Defendants' 2015 delay in promoting Griffin and Rayfield to sergeant. The Court previously dismissed the corresponding claims in Plaintiffs' First Amended Complaint for similar deficiencies. (*See* D.E. No. 34 at 12–13). Plaintiffs in their opposition have not addressed Defendants' argument that Griffin and Rayfield have not alleged that they were treated differently than any other similarly situated officer, and Plaintiffs have not given this Court any indication that they would be able to cure the claims' deficiencies in a fourth bite at the apple. (*See* Opp'n Br. at 13–16). For these reasons, the dismissal will be *with prejudice*.

*See, e.g.*, *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) ("When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied.").

### C. Counts I, II & IV: Pacelli's § 1983 and NJCRA Race Discrimination Claims

***Overview.*** As discussed above, Pacelli brings race discrimination claims against Defendant for a two-year delay in granting a requested transfer to a specific day shift to accommodate her and her husband's childcare needs. (SAC ¶¶ 67–82 & 87–93). Specifically, Pacelli alleges that (i) upon information and belief, various day shifts were open and available during the two-year period; (ii) these shifts were provided to white and/or non-black officers; and (iii) Defendants refused to grant her transfer requests because of her race. (*Id.* ¶¶ 81 & 93).

Defendants argue that Pacelli's "vague conclusory assertion that 'upon information and belief, various day shift positions were open and available, but were provided to Caucasian and/or non-African American Officers'" is insufficient to allege that Pacelli was treated differently from similarly situated individuals. (Moving Br. at 13). Defendants also argue that Pacelli "has offered no facts that she was denied a transfer to her narrow preferred shift due to purposeful racial discrimination," and that she "merely assigns a racially discriminatory motive to a routine shift assignment based on nothing more than the fact that she happens to be African American." (*Id.*).

Plaintiffs counter that despite Defendants' knowledge of Pacelli's childcare hardship, Defendants provided day shift positions to white and/or non-black officers over Pacelli. (*See* Opp'n Br. at 17). Plaintiffs contend that "[r]egardless of whether these transfers were . . . given to others for child-care needs, the fact remains that these transfers were given to non-African Americans over [Pacelli]." (*Id.* at 18).

*Analysis.*[9]  The Court agrees with Defendants that Plaintiffs have not adequately alleged purposeful discrimination.  *See Chambers*, 587 F.3d at 196.  In granting Defendants' last motion to dismiss on this claim, this Court held that "Plaintiffs assert[ed] no . . . non-conclusory assertions [] that Defendants denied [Pacelli's] request[s] because of her race."  (D.E. No. 34 at 14).  In the Second Amended Complaint, Plaintiffs have added only the two following factual allegations regarding the transfer denials:

> Chief Fraher was responsible for making transfers in the department, and issued said transfers in a manner to give preferential treatment to Caucasian and non-African American officers over African American officers. . . .
>
> Upon information and belief, various day shift positions were open and available, but were provided to Caucasian and/or non-African American officers.

(*See* SAC ¶¶ 67–82).

These additions have not cured the deficiencies identified in the previous amended complaint.  The Second Amended Complaint still lacks the necessary factual foundation for an inference of race discrimination.  Contrary to Plaintiffs' argument, "the fact . . . that these transfers were given to non-African Americans over [Pacelli]" is not enough.  (*See* Opp'n Br. at 17).  All the Court can possibly infer from Plaintiffs' alleged facts is that non-African Americans received the shift that Pacelli wanted.  But this is not the same as an inference that Fraher intentionally denied Pacelli's transfer because of her race.  *See, e.g.*, *Fallon v. Meissner*, 66 F. App'x 348, 352 (3d Cir. 2003) (holding that there was no inference of age discrimination in denial of a transfer for an experienced Immigration and Naturalization Services attorney position where the defendants knew of the plaintiff's long commute, the plaintiff had three to four years of experience in immigration law, and the defendants gave the position to an attorney under the

---

[9]  The Court provided the applicable legal standards for these claims in Section II.B.  *See supra* at 12.

age of forty with no experience in immigration law).  As discussed above, plaintiffs must generally allege facts that do more than speculate on discriminatory intent or purpose.  *Vill. of Arlington Heights*, 429 U.S. at 265.  Here, as with Griffin's and Rayfield's delay-in-promotion allegations, Plaintiffs have not pleaded more than a sheer possibility that Fraher denied Pacelli's transfer requests because of her race, and a sheer possibility is not enough to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678.  Furthermore, the possibility of intentional racial discrimination by Fraher is attenuated by the fact that Pacelli appeared to desire a very specific shift, and that Defendants eventually granted her that shift.  (*See* SAC ¶¶ 67–82 & 87–93).

Because Plaintiffs have not adequately pleaded intentional discrimination, the Court will dismiss Counts I, II, and IV to the extent they seek relief for racial discrimination pertaining to the two years in which Fraher allegedly denied Pacelli's transfer requests.  *See Chambers*, 587 F.3d at 196.  Consequently, the Court will also dismiss the corresponding *Monell* and NJCRA claims.  *See Vargas*, 783 F.3d at 974; *Gormley*, 93 A.3d at 358.  The dismissals are *with prejudice*.  *See Arthur*, 434 F.3d at 204.

### D.      Count III: Plaintiffs' NJLAD Discrimination Claims

*Overview.*  Plaintiffs bring NJLAD discrimination claims based on the allegations surrounding Defendants' 2015 delay in effectuating Griffin's and Rayfield's promotions and Defendants' denials of Pacelli's transfer requests.  (SAC ¶¶ 40–93 & 108–13).

Defendants argue that Plaintiffs have not adequately alleged either that Plaintiffs suffered an adverse employment action or that others outside Plaintiffs' protected class did not suffer a similar adverse employment action.  (Moving Br. at 16–17).  In opposition, Plaintiffs simply rely on their arguments regarding their equal protection claims.  (Opp'n Br. at 24–25).

*Legal Standard.*  The NJLAD prohibits discrimination "because of race, creed, color,

national origin, ancestry, age, sex, gender identity or expression, affectional or sexual orientation, marital status, familial status, liability for service in the Armed Forces of the United States, disability or nationality." N.J.S.A. § 10:5–3. Under the NJLAD, a *prima facie* claim for racial discrimination requires evidence that (i) the plaintiff belongs to a protected class; (ii) the plaintiff was performing a job at a level that met the employer's legitimate expectations; (iii) the plaintiff suffered an adverse employment action; and (iv) others not within the protected class did not suffer similar adverse employment actions. *Zive v. Stanley Roberts, Inc.*, 867 A.2d 1133, 1138–40 (N.J. 2005).

   ***Analysis.*** The Court finds that Plaintiffs' allegations are insufficient to state a claim for discrimination under the NJLAD. For the same reasons the Court found that Griffin's and Rayfield's equal protection claims fail for not adequately pleading differential treatment (*see supra* at 15), the Court finds that Plaintiffs have not shown that others not within the protected class did not suffer similar adverse employment actions. *See Zive*, 867 A.2d at 1138–40. Griffin and Rayfield do not allege that non-minority officers eligible for promotion were promoted ahead of them, and they do not allege that any non-minority promotions were expedited to give non-minorities sufficient service time to sit for the Lieutenant's exam. (*See* SAC).

   With respect to Pacelli's NJLAD race discrimination claim, the Court finds that Plaintiffs fail the third prong—i.e., that Pacelli suffered an adverse employment action. *See Zive*, 867 A.2d at 1138–40. Generally, "an adverse employment action is one which is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (citation omitted). To be adverse, an employment action "must be adverse in the right way." *Fallon*, 66 F. App'x at 352. Specifically, the employment action "must not arise from the employee's individual preferences

and must be job-related in the appropriate sense." *Id.* (internal quotation marks and citation omitted); *see, e.g.*, *Dilenno v. Goodwill Indus.*, 162 F.3d 235, 236 (3d Cir. 1998) (stating that an inability to do a particular job is job-related, unlike a desire to live in a certain city).

Pacelli's request for a transfer to a 7 a.m. to 3 p.m. shift arose from her "individual preference[]" to pick her children up from school as well as her personal childcare issues. *See Fallon*, 66 F. App'x at 352. Her requests were not "job-related in the appropriate sense," and therefore Defendants' denials of her requests were not adverse employment actions. *See Fallon*, 66 F. App'x at 352. And in any event, Defendants eventually granted her transfer request.

The Court dismisses Plaintiffs' NJLAD race discrimination claims (Count III) *with prejudice*.

### E.     All Counts: Plaintiffs' Hostile Work Environment Claims

*Overview.* Plaintiffs bring hostile work environment claims under an equal protection theory and the NJLAD. (SAC ¶¶ 101–21). The core of these claims is a series of statements made around October or November 2014 and July or August 2015. (*See id.* ¶¶ 17–25 & 83–85).

With respect to the hostile work environment claims brought under the Fourteenth Amendment Equal Protection Clause, Defendants argue that Plaintiffs have not adequately pleaded Fraher's personal involvement in the alleged constitutional violations. (Moving Br. at 14–15). With respect to the NJLAD hostile work environment claims, Defendants contend that the allegations are not sufficient to make a reasonable African American officer believe that the conditions of his or her employment have been altered, as the claims are not based on Plaintiffs' own experiences of discriminatory conduct. (*Id.* at 18.). Defendants also contend that the conditions of Plaintiffs' employment were not altered from the alleged discriminatory conduct because Griffin and Rayfield were promoted and Pacelli was granted her requested transfer. (*Id.*

at 18–19).

Plaintiffs counter that they added several allegations in Second Amended Complaint indicating Fraher's personal involvement in the discriminatory activities. (Opp'n Br. at 18–24). Plaintiffs argue that alleged statements alone or cumulatively establish viable hostile work environment claims. (*Id.* at 27–29).

***Legal Standard.*** A hostile work environment claim brought under the aegis of the Fourteenth Amendment requires that a plaintiff show: "(1) that he or she suffered intentional discrimination because of race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) a basis for personal liability." *Ugorji v. N.J. Envtl. Infrastructure Tr.*, No. 12-5426, 2014 WL 2111076, at *5 (D.N.J. June 19, 2014). A hostile work environment claim brought under the NJLAD requires a showing: "(1) that plaintiff is in a protected class; (2) that plaintiff was subjected to conduct that would not have occurred but for that protected status; and (3) that it was severe or pervasive enough to alter the conditions of employment." *Victor v. State*, 4 A.3d 126, 141 (N.J. 2010).

***Analysis.*** Plaintiffs have stated viable hostile work environment claims. Plaintiffs allege they viewed all or a portion of the following graffiti written by white officers around PPD headquarters: "Priority = dumb + lazy;" "Priority lazy scum;" "Do you honestly believe you should have gotten stripes[];" "Loose 3 Sgts, get 2 fake ones[];" "Speak English, savage;" and "I is dumb. Cans I be a Sgt. too now. Fuck Cheaters." (SAC ¶¶ 17–18). Plaintiffs aver that officers posted a statement on social media stating "I have MLK Blvd and Rosa Parks Blvd, so you know how busy I am," and that they viewed or learned of the post because white officers circulated the post widely throughout the department. (*Id.* ¶¶ 17–18). Plaintiffs also aver that

upon learning that Pacelli could be transferred to his shift, a white officer stated: "I don't take orders from niggers." (*Id.* ¶ 83).

Considering the content of these alleged statements, the Court finds meritless Defendants' argument that "[t]he Second Amended Complaint . . . is entirely devoid of any factual allegations sufficient to allege severe or pervasive conduct [or] sufficient to make a reasonable African American officer conclude that the conditions of employment had been altered." (*See* Moving Br. at 18). The statements alleged are unambiguously discriminatory toward black officers, intentional, severe, and of a nature that they could objectively and subjectively affect Plaintiffs and alter the conditions of their employment. *See Ugorji*, 2014 WL 2111076, at *5; *Victor*, 4 A.3d at 141.

Moreover, Defendants provide no legal support for this Court to accept their factual argument that "Plaintiffs' hostile work environment are not based on their <u>own</u> experiences of severe or pervasive racially discriminatory conduct. . . ." (*See* Moving Br. at 18; Reply Br. at 10). After all, this Court must accept Plaintiffs' factual allegations as true for purposes of resolving Defendants' motion to dismiss. *See Iqbal*, 556 U.S. at 678; *Bistrian*, 696 F.3d at 358 n.1. Plaintiffs aver that they viewed all or a portion of the alleged discriminatory statements. (*See* SAC ¶¶ 18 & 20). In any event, many of the alleged discriminatory statements appear targeted toward officers on the priority list, of which all three Plaintiffs were members, and one statement was specifically about Pacelli. (*See id.* ¶¶ 17 & 22). Consequently, the Court is not persuaded by Defendants' argument that "Plaintiffs point to conduct <u>not</u> directed at them . . . ." (*See* Moving Br. at 18).

The Court also rejects Defendants' argument that the conditions of Plaintiffs' employment were not altered from the alleged discriminatory conduct because Griffin and

Rayfield were promoted and Pacelli was granted her requested transfer. (*See id.* at 18–19). Defendants again provide no legal authority for support. (*See id.*). Additionally, as Plaintiffs correctly point out, a tangible adverse change in the work environment is not required to support a hostile work environment claim. (*See* Opp'n Br. at 25–26). The racially discriminatory statements themselves form the factual basis for the hostile work environment claim. *See, e.g.*, *Taylor v. Metzger*, 706 A.2d 685, 693 (N.J. 1998) ("[A] loss of a tangible job benefit is not necessary [for a racial harassment claim] since the harassment itself affects the terms or conditions of employment." (quoting *King v. Board of Regents of Univ. of Wis. Sys.*, 898 F.2d 533, 537 (7th Cir. 1990))).

Finally, the Court finds that Plaintiffs have adequately pleaded Fraher's involvement. "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Plaintiffs allege that Fraher knew of the graffiti and the white officer's statement regarding Pacelli. (SAC ¶¶ 18 & 24). Plaintiffs aver that "Fraher and the PPD failed to take appropriate remedial action to appropriate[ly] investigate the graffiti, discipline those involved, and/or ensure that similar conduct did not occur again." (*Id.* ¶ 18). Plaintiffs also aver that Fraher did not take appropriate action to investigate the white officer's statement regarding Pacelli. (*Id.* ¶ 24). Considering the Second Amended Complaint in its entirely and the nature of the allegations, the Court finds that this is enough "to raise a reasonable expectation that discovery will reveal evidence of" Fraher's and therefore Paterson's liability. *Phillips*, 515 F.3d at 234 (internal quotation marks omitted).

For these reasons, the Court will deny Defendants' motion to dismiss Plaintiffs' hostile work environment claims.

**IV.     CONCLUSION**

The Court GRANTS-IN-PART and DENIES-IN-PART Defendants' motion to dismiss for the reasons above.  To summarize, Plaintiffs' hostile work environment claims will proceed, but all other claims are dismissed *with prejudice*.   An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**